UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In Re: Rebecca M. Yelle


Debtor: Chapter 13 Case
Case No. BKY 07-30560-GFK.

---

### NOTICE OF HEARING AND
### MOTION FOR RELIEF FROM STAY

---

TO:   The Debtor, Debtor's Attorney, Chapter 13 Trustee, United States Trustee, and the
other parties in interest specified in Local Rule 1204(a).

1.    **CitiMortgage, Inc.** (**Movant**), a secured creditor of the Debtor herein, by its
undersigned attorney, moves the Court for the relief requested below and gives notice of
hearing herewith.

2.    The Court will hold a hearing on this motion at 10:30 o'clock a.m., on January
4, 2011, before the Honorable Gregory F. Kishel, in Courtroom 2A, United States
Courthouse, 316 North Robert Street, St. Paul, Minnesota or as soon thereafter as counsel
can be heard.

3.    Any response to this motion must be filed and served not later than
December 30, 2010 which is five (5) days before the time set for the hearing (including
Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION
IS TIMELY FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE
MOTION WITHOUT A HEARING.

4.    This motion is filed under Fed. R. Bankr. P. 9013 and Local Rules 9013-2.
Movant seeks relief from the automatic stays of 11 U.S.C. §362 and Fed. R. Bankr. P. 4001
with respect to certain real property owned by the Debtor and subject to Movant's first
mortgage lien.

5.    The Petition commencing this Chapter 13 Case was filed on February 19,
2007, and the case is now pending in this Court.  This Court has jurisdiction over this
motion pursuant to 28 U.S.C. §157(a), §1334, 11 U.S.C. §362(d), Bankruptcy Rule 5005,
Local Rule 1070-1 and other applicable rules.  This proceeding is a core proceeding.

6.    By certain mortgage dated March 31, 2005, in the original principal amount

of $164,000.00 (**Mortgage**), Movant acquired a first mortgagee's interest in the following real property (**Property**):

Parcel 1: Lot 5, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2, Ramsey County, Minnesota

Parcel 2: Lot 4, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2, Ramsey County, Minnesota.

The Mortgage was filed for record in the office of the County Recorder, in and for Ramsey County, Minnesota, on April 18, 2005 (abstract) and April 18, 2005 (torrens), as document number 3848847 (abstract) and 1912741 (torrens). Stephanie M. Wilson, a co-mortgagor, is also liable on the mortgage.

7.     The terms of Debtor's confirmed Chapter 13 plan (**Plan**) require Debtor to make post-petition Mortgage payments directly to Movant when due. Debtor is delinquent with respect to post-petition Mortgage payments for the months of August 2010 through December 2010 in a total amount of $5,932.79, excluding late charges.

8.     The subject property has a market value of $209,900.00 pursuant to the Debtor(s) bankruptcy petition and the Ramsey County real estate records lists a market value of $155,400.00.

9.     The subject real estate is encumbered in the amount of $41,000.00 by a second mortgage in favor of Bremer Financial Services. The total amount of debt secured by the subject property is $197,060.24, including Movant's mortgage.

10.    Debtor's delinquency under the terms of the Mortgage constitute cause, within the meaning of 11 U.S.C. §362(d)(1), entitling Movant to relief from the automatic stay. Movant does not have, and has not been offered, adequate protection of its interest in the Property.

**WHEREFORE,** Movant, by its undersigned attorney, moves the Court for an order modifying the automatic stay of 11 U.S.C. §362(a) and §1301(a) so as to permit Movant to foreclose its Mortgage on the Property and for such other relief as the Court may deem to be just, fair and equitable.

Dated this 17th day of December, 2010.

PETERSON, FRAM AND BERGMAN
A Professional Association

BY: /e/ Steven H. Bruns
     Steven H. Bruns
     Atty. Reg. 14888X
     **Attorneys for Movant**
     Suite 800, 55 East Fifth Street
     St. Paul, Minnesota  55101
     Telephone: (651)  291-8955

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re: Rebecca M. Yelle,

Debtor: Chapter 13 Case
Case No. BKY 07-30560-GFK.

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM STAY

STATE OF TEXAS     )
                    ) ss.
COUNTY OF DALLAS  )

I, _Eric Koch_____, your affiant, being first duly sworn on

oath, state as follows:

1.     I am an employee of **CitiMortgage, Inc. (Movant)**, and I have personal

knowledge of the facts stated herein.

2.     I make this Affidavit in support of a motion to lift, modify or condition the

bankruptcy stay.

3.     Debtor is the mortgagor on a mortgage dated March 31, 2005 which

covers real property located in Ramsey County and legally described as follows:

Parcel 1: Lot 5, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2, Ramsey County, Minnesota

Parcel 2: Lot 4, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2, Ramsey County, Minnesota,

and which is commonly known as: 510 Wyoming Street E, St. Paul, MN 55107. The

mortgage was given to secure a promissory note. Copies of the note and the mortgage

are attached hereto as Exhibit A and Exhibit B, respectively, and incorporated herein by this reference. The mortgage was assigned to Movant. A copy of the assignment is attached hereto as Exhibit C and incorporated herein by this reference.

4.     On or about February 19, 2007, Debtor filed a Petition under Chapter 13 of Title 11 U.S. Code in the United States Bankruptcy Court for the District of Minnesota.

5.     Debtor's Chapter 13 Plan (**Plan**) provides that Debtor will maintain payments due during the pendency of this case.

6.     Debtor has failed to make payments which were due during the pendency of this case, resulting in an arrearage as evidenced by Local Form 4001-1, a copy of which is attached as Exhibit D.    The total mortgage debt is $156,060.24, which includes an unpaid principal balance of $149,864.31  plus accrued interest through December 30, 2010 in the amount of $2,323.44.  Thereafter, interest accrues on the unpaid principal balance at $12.83 per day.

7.     The subject property has a market value of $209,900.00 pursuant to the Debtor(s) bankruptcy petition and  the Ramsey County real estate records lists a market value of $155,400.00.  It is believed that the subject real estate is encumbered in the amount of $41,000.00 by a second mortgage in favor of Bremer Financial Services. The total amount of debt secured by the subject property is $197,060.24, including Movant's mortgage and a second mortgage.

8.   I have read the Motion in this matter, and it is true to the best of my knowledge, information and belief.

Further, I saith not.



Subscribed and sworn to before me
this ___8___ day of December, 2010

Notary Public

KELLY S GIBSON
My Commission Expires
February 24, 2014

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR One-Year Index As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| **MARCH 31** · **2005** | **Bloomington** | **MN** |
|---|---|---|
| [Date] | [City] | [State] |

**510 Wyoming Street E.**
**Saint Paul, MN 55107**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 164,000.00**      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

**ADVISOR'S MORTGAGE, LLC,**
**LIMITED LIABILITY COMPANY**                                    . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **5.125 %**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **MAY 1** , **2005** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **APRIL 1** , **2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**5270 WEST 84TH STREET, SUITE #120 BLOOMINGTON, MN. 55437**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **892.96** . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **APRIL** , **2010** , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-WSJ One-Year LIBOR-Single Family-Fannie Mae UNIFO...

FNMA3528 (04/02)        Page 1 of 4        Initial


EXHIBIT
A

LOAN NO. 

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE QUARTER** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.125** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.125** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**Rebecca M. Wilson**                    -Borrower

_____ (Seal)
**Stephanie M. Wilson**                  -Borrower

Social Security Number __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__

Social Security Number __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__

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

Social Security Number _____

Social Security Number _____

*[Sign Original Only]*

PAY TO THE ORDER OF

## CITIMORTGAGE, INC.

Without recourse
Advisor s Mortgage LLC

By: _____
Meg Mercado Assistant Secretary

Document# 3848847
Recorded 04/18/2005 1100
County Recorder, Ramsey County, MN
Mortgage Registration Tax Paid 08/05/2005
3.2.3 28577



After Recording Mail To:
Advisor's Mortgage, LLC
5270 West 84th Street, Suite 120
Bloomington, MN 55437

——————————————— [Space Above This Line For Recording Data] ———————————————

LOAN NO.: 00~~~~~~~~~

RETURN TO **MORTGAGE**
Epic Support Services
1801 E. American Blvd. Ste # 15         *Abstract*
Bloomington, MN 55425
*7 - 05 - 837136*

MIN: 100199600000101176

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated                **MARCH 31, 2005** ,
together with all Riders to this document.

**(B) "Borrower"** is
**Rebecca M. Wilson, A Single Person AND Stephanie M. Wilson, A Single Person**


Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is as eparate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is   **ADVISOR'S MORTGAGE, LLC**

Lender is a  **LIMITED LIABILITY COMPANY**
organized and existing under the laws of                **THE STATE OF MINNESOTA**
Lender's address is   **5270 WEST 84TH STREET STE 400**
**BLOOMINGTON, MN 55437**

**(E) "Note"** means the promissory note signed by Borrower and dated                **MARCH 31, 2005**
The Note states that Borrower owes Lender
**ONE HUNDRED SIXTY-FOUR THOUSAND AND 00/100**
Dollars (U.S. $     **164,000.00**       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than                **APRIL 1, 2035**

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01  (A)                Page 1 of 16        Initials: _RW_ /_Sw_

EXHIBIT
B

**** PAID 04/18/2005 ****
EPIC SUPPORT SVCS MRT
04/18/2005 C2  21

398.68

Document# 1912741
Certified Filed On 04/18/2005 1100
Registrar of Titles, Ramsey County, MN
Mortgage Registration Tax Paid 08/08/2005
Certificate# 530641
3.2.3 28738

After Recording Mail To:
Advisor's Mortgage, LLC
5270 West 84th Street, Suite 120
Bloomington, MN 55437

LOAN NO.: 0~~~~~~~~~

——————————— [Space Above This Line For Recording Data] ———————————

RETURN TO: **MORTGAGE**        MIN: 100199600000101176
Epic Support Services
1801 E. American Blvd. Ste # 15        *Torrens*
Bloomington, MN 55425

*7-05-837136*

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated        MARCH 31, 2005        ,
together with all Riders to this document.

(B) "Borrower" is
Rebecca M. Wilson, A Single Person AND Stephanie M. Wilson, A Single Person

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is as eparate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is  ADVISOR'S MORTGAGE, LLC

Lender is a  LIMITED LIABILITY COMPANY
organized and existing under the laws of        THE STATE OF MINNESOTA        .
Lender's address is  5270 WEST 84TH STREET STE 400
BLOOMINGTON, MN 55437

(E) "Note" means the promissory note signed by Borrower and dated        MARCH 31, 2005        .
The Note states that Borrower owes Lender
ONE HUNDRED SIXTY-FOUR THOUSAND AND 00/100
Dollars (U.S. $    164,000.00    ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than        APRIL 1, 2035        .

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01  (A)        Page 1 of 13        Initials: *SW/RW*

**** PAID 04/18/2005 ****
EPIC SUPPORT SVCS MRT
04/18/2005 C2 121

396.60

1-16

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

<table>
<tr><td><strong>COUNTY</strong></td><td>of</td><td><strong>Ramsey</strong></td><td>:</td></tr>
<tr><td>[Type of Recording Jurisdiction]</td><td></td><td>[Name of Recording Jurisdiction]</td><td></td></tr>
</table>

**Parcel 1:**
**Lot 5, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2,**
**Ramsey County, Minnesota.**

**Parcel 2:**
**Lot 4, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2,**
**Ramsey County, Minnesota.**

<table>
<tr><td>which currently has the address of</td><td></td><td colspan="2"><strong>510 Wyoming Street E.</strong><br>[Street]</td><td></td></tr>
<tr><td><strong>Saint Paul</strong><br>[City]</td><td>, Minnesota</td><td><strong>55107</strong><br>[Zip Code]</td><td>("Property Address"):</td></tr>
</table>

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] Biweekly Payment Rider | [ ] V.A. Rider | |
| [ ] Other(s) [specify] | | |

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Rebecca M Wilson*     (Seal)
                                **Rebecca M. Wilson**     -Borrower

_____     *Stephanie M. Wilson*     (Seal)
                                **Stephanie M. Wilson**     -Borrower

_____     _____ (Seal)
                                 -Borrower

_____     _____ (Seal)
                                 -Borrower

—————————————————— [Space Below This Line For Acknowledgment] ——————————————————

**STATE OF MINNESOTA,**                      *Hennepin*     **County ss:**

On this *31* day of *March*, 20 *05*, before me appeared
**Rebecca M. Wilson, A Single Person AND Stephanie M. Wilson, A Single Person**

to me personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

*MK Hanson* _____
                                 - Notary Public

[Notary Seal: MARY KATHLEEN HANSON, NOTARY PUBLIC - MINNESOTA, My Commission Expires Jan. 31, 2010]

My Commission expires:

This instrument was prepared by:
**Advisor's Mortgage, LLC**
**5270 West 84th Street, Suite 120**
**Bloomington, MN 55437**
**952-838-8747**

Tax statement sent to:
*Advisors Mrtg LLC*
*5270 W 84Th St #120*
*Bloomington Mn 55437*

**MINNESOTA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01         **Page 13 of 13**

① Abstract
··· + Torrens

Document# 1992983
Certified Filed On 01/19/2007 1100
Registrar of Titles, Ramsey County, MN
Certificate# 530641
Document Ref# 1912741
1.4.5 188617

530641

## ASSIGNMENT OF MORTGAGE

MORTGAGE #   T: 1912741
             A: 3848847

Torrens # 530641

Drafted by:
Wilford & Geske
7650 Currell Boulevard
Suite 300
Woodbury, MN 55125
(651) 209-3300
To: 17040301C

Return to:
Wilford

1 of 2

EXHIBIT
L

Document# 4004431
Recorded 01/19/2007 1100
County Recorder, Ramsey County, MN
1.4.5 188617

## ASSIGNMENT OF MORTGAGE

MORTGAGE # _T: 1912741_
_A: 3848847_

Torrens # 530641

Drafted by:
Wilford & Geske
7650 Currell Boulevard
Suite 300
Woodbury, MN 55125
(651) 209-3300
ID: 170140301

Return to:
Wilford

1 of 2

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS** that Mortgage Electronic Registration Systems, Inc., a Delaware corporation, for good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, does hereby sell, assign, transfer, and set over to CitiMortgage Inc., its successors and assigns, that certain mortgage executed by Rebecca M Wilson, a Single Person and Stephanie M Wilson, a Single Person, as mortgagor, dated March 31, 2005, filed for the record on 4/18/2005 in the office of the Ramsey County Recorder/Registrar of Titles as 3848847,together with all right and interest in the land herein described and in the note and obligations therein specified, and to the debt thereby secured; and does hereby covenant with the assignee, its successors and assigns that it has good right to sell, assign and transfer the same.

Registered April 18, 2005 as Document No. 1912741
This assignment is made without recourse and without warranty.

Dated: December 9, 2006

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By _____
Cindy Constantino, Vice President

STATE OF    Missouri           )
                               )ss.
COUNTY OF    ST. LOUIS         )

The foregoing instrument was acknowledged before me this December 9, 2006, by Cindy Constantino, the Vice President of Mortgage Electronic Registration Systems, Inc., a Delaware corporation on behalf of the corporation.

_____
Notary Public

THIS INSTRUMENT WAS DRAFTED BY:
Wilford and Geske
7650 Currell Blvd.
Suite 300
Woodbury, MN 55125

Tiffany Jinson
Notary Public  Notary Seal
State of Missouri
County of St. Louis
Expires August 03, 2007

2

**Loan History:** Begin loan history from the date of the first default related to the current default amount that is c

| | | CHARGES | | | |
|---|---|---|---|---|---|
| Date | Amount Received from Debtor | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charges* |
| 8/1/2010 | $0.00 | $725.26 | $329.99 | $36.26 | $168.00 |
| 9/1/2010 | $0.00 | $725.26 | $329.99 | $36.26 | $343.50 |
| 10/1/2010 | $0.00 | $725.26 | $329.99 | $36.26 | |
| 11/1/2010 | $0.00 | $725.26 | $329.99 | $36.26 | |
| 12/1/2010 | $0.00 | $725.26 | $329.99 | | |
| | $0.00 | | | | |
| Totals | $0.00 | $3,626.30 | $1,649.95 | $145.04 | $511.50 |
| | (a) | (b) | (c) | (d) | (e) |

*Any "Other Charge" must be described, itemized by amount and allowed under Note and/or mortgage (ie insp

**NOTE: Columns (b)+(c)+(d)+(e)-(a) must equal the current default amount that is claimed in the motion.**

| | |
|---|---|
| Attorneys fees and filing fee for the motion, if allowed under Note and/or Mortgage and sought by Movant to resolve motion | $700.00 |
| Current Default Amount Claimed in the Motion | $5,932.79 |
| Escrow Balance (amount held for payment of taxes, insurance, etc.) | -$1,809.79 |
| Suspense Account Balance (amount of unapplied payments) | $550.73 |



laimed in the motion.

Description of Other Charges
Appraisal
Inspections

ection fee, appraisal fee, insurance,

Does not include attorney fees

In Re:     Rebecca M. Yelle,

Debtor: Chapter 13 Case
Case No. BKY 07-30560-GFK.

## MEMORANDUM OF LAW

CitiMortgage, Inc. (**Movant**) submits this memorandum of law in support of its motion for relief from the stays in the above-entitled matter.

## FACTS

Movant holds a valid, duly perfected mortgage on certain real property owned by Debtor.  Debtor's confirmed Chapter 13 Plan (**Plan**) requires Debtor to make post-petition mortgage payments directly to Movant, when due.  Debtor is delinquent in respect to post-petition mortgage payments.    Stephanie M. Wilson, a co-mortgagor, is also liable on the

The total mortgage debt is $156,060.24, which includes accrued interest through December 30, 2010.  Thereafter, interest accrues on the unpaid principal balance at $12.83 per day.

The subject property has a market value of $209,900.00 pursuant to the Debtor(s) bankruptcy petition and  the Ramsey County real estate tax records list a market value of $155,400.00.   Furthermore, the subject real estate is encumbered in the amount of $41,000.00 by a second mortgage in favor of Bremer Financial Services.  The total amount of debt secured by the subject property is $197,060.24, including Movant's mortgage.

## ARGUMENT

Under §362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted upon request of a creditor "for cause, including the lack of adequate protection of an interest in property of such [creditor]." 11 U.S.C. §362(d)(1).  Debtor has failed to make the payments required by the terms of the Plan.  Such a failure constitutes cause for lifting the automatic stay pursuant to 11 U.S.C. §362(d)(1).  First Federal Savings and Loan Association of Minneapolis v. Whitebread, 18 B.R. 192 (Bkrtcy. D. Minn. 1982). Furthermore, debtor has otherwise failed to provide Movant with adequate protection of its interest in the property.

Such circumstances constitute cause, within the meaning of §362(d)(1), justifying relief from the stay.  In Re Tainan, 48 B.R. 250 (Bkrtcy E.D. Pa. 1985);  In Re Quinlan, 12 B.R. 516 (Bkrtcy. W.D. Wis. 1981).

Accordingly, Movant is entitled to an order terminating the stays of 11 U.S.C. §362(a), §1301(a) and authorizing it to foreclose its mortgage on the property.

Dated this 17th day of December, 2010.

**PETERSON, FRAM AND BERGMAN**
A Professional Association


BY:  /e/ Steven H. Bruns
Steven H. Bruns
Atty. Reg. #14888X
Attorneys for Movant
Suite 800, 55 East Fifth Street
St. Paul, Minnesota  55101
Telephone: (651)  291-8955

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:    Rebecca M. Yelle,


Debtor: Chapter 13 Case
Case No. BKY 07-30560-GFK.


UNSWORN DECLARATION
FOR PROOF OF SERVICE

I, Steven H. Bruns, employed by **PETERSON, FRAM AND BERGMAN, P.A.**, attorneys licensed to practice in this court, with an office at Suite 800, 55 East Fifth Street, St. Paul, MN, 55101, declare that on December 17, 2010 I served the annexed: a) Notice of Hearing and Motion for Relief from Stay, b) Affidavit in Support of Motion for Relief from Stay, c) Memorandum of Law, and d) proposed Order for Relief upon each of the parties listed below by mailing to each of them a copy of each thereof, enclosed in an envelope, first class postage prepaid, and by depositing same in the post office at St. Paul, Minnesota, directed to them at their last known addresses, as follows:

United States Trustee
300 S 4th St  # 1015
Minneapolis MN  55415-1329

Rebecca M. Yelle
510 Wyoming Street E
St. Paul, MN 55107

Stephanie M. Wilson
510 Wyoming Street E
St. Paul, MN 55107

Jasmine Z. Keller
Chapter 13 Trustee
310 Plymouth Bldg.
12 S 6th Street
Minneapolis MN  55402

Robert J. Hoglund, Esq.
1781 W. County Road B
PO Box 130938
Roseville, MN 55113


And I declare, under penalty of perjury, that the foregoing is true and correct.

Signed:  /e/ Steven H. Bruns

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re: Rebecca M. Yelle,

Debtor: Chapter 13 Case
Case No. BKY 07-30560-GFK.

## ORDER FOR RELIEF FROM AUTOMATIC STAY

This case is before the court on the motion of CitiMortgage, Inc. seeking relief from the automatic stay of 11 U.S.C. §362(a)s.  Based on the motion and the file,

**IT IS ORDERED**:  The automatic stays of 11 U.S.C. §362(a)  terminated as to CitiMortgage, Inc..  CitiMortgage, Inc., its successors or assigns, are authorized to foreclose pursuant to Minnesota law the mortgage dated March 31, 2005, filed for record in the office of the county recorder of  Ramsey County, Minnesota, on April 18, 2005 (abstract) and April 18, 2005 (torrens), as document number 3848847 (abstract) and 1912741 (torrens) covering property legally described as:

Parcel 1:  Lot 5, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2, Ramsey County, Minnesota
Parcel 2:  Lot 4, Block 32, The West St. Paul Real Estate Syndicate Addition No. 2, Ramsey County, Minnesota.

Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated:

_____
Gregory F. Kishel
United States Bankruptcy Judge